UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
SONIA B. DAVIS,                              :
                    Plaintiff,         :
                                 :
v.                                            :
                                 :
CITY OF MOUNT VERNON; MOUNT                   :
VERNON POLICE DEPARTMENT; POLICE              :            **OPINION AND ORDER**
OFFICER DERVIN CHERY; POLICE                  :
OFFICER EDUARDO BAERGA; POLICE                :            17 CV 8029 (VB)
OFFICER TIMOTHY W. BRILEY; POLICE             :
OFFICER DARIUS M. MITCHELL; POLICE            :
OFFICER ROBERT F. KRESSMAN;                   :
SERGEANT MICHAEL MARCUCULLI; and              :
POLICE OFFICERS JANE & JOHN DOES,             :
                    Defendants.        :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Sonia B. Davis, proceeding pro se, brings this action under 42 U.S.C. § 1983,

alleging defendants the City of Mount Vernon (the "City"), the Mount Vernon Police

Department ("MVPD"), Sergeant ("Sgt.") Michael Marcuculli, and Police Officers ("P.O.s")

Dervin Chery, Eduardo Baerga, Timothy W. Briley, Darius M. Mitchell, Robert F. Kressman,

and John and Jane Does, violated plaintiff's Fourth Amendment rights in connection with her

involuntary transport to Montefiore Mount Vernon Hospital ("Montefiore MV") on October 19,

2016.[1]  Plaintiff also brings state law claims against defendants for assault and battery.

      Now pending are defendants' motion for summary judgment (Doc. #47) and plaintiff's

two submissions styled "Notice of Motion" for judgment, which the Court construes as

---

[1]    Plaintiff was represented by counsel in this matter until January 17, 2019, when the Court
granted plaintiff's counsel's motion to withdraw.  (See Doc. #35).

responsive to defendants' motion,[2] as well as cross-motions for summary judgment.[3]  (See Docs. ##45, 55).

For the reasons set forth below, defendants' motion is GRANTED and plaintiff's motions are DENIED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

Defendants have submitted a memorandum of law, a statement of material facts pursuant to Local Civil Rule 56.1, a declaration, affidavits, and supporting exhibits.  Plaintiff has submitted various medical records with respect to her requests for judgment.  Together, the parties' submissions reflect the following factual background.

I.    October 19, 2016, Involuntary Transport to Montefiore MV

At all relevant times, plaintiff resided at 218 South 3rd Avenue, Apartment 4B, in Mount Vernon (the "apartment").

Early on the morning of October 19, 2016, plaintiff called MVPD and requested immediate assistance at her apartment.  The audio of plaintiff's call was recorded by MVPD. (See Doc. #51 ("Bushnell Decl.") Ex. I).  During the call, plaintiff told the dispatcher she needed

---

[2]    Plaintiff failed directly to oppose defendants' motion, despite having been granted an extension of time to do so.  (See Doc. #54).  However, by Order dated September 3, 2019 (Doc. #46), the Court liberally construed plaintiff's first notice of motion submission (Doc. #45) as a response to defendants' summary judgment motion, which, at that time, had not yet been filed. (Doc. #46).  And by Order dated January 17, 2020, the Court construed plaintiff's second notice of motion submission as an additional response to defendants' motion.  (Doc. #56).  The January 17 Order also deemed the parties' motions fully submitted.  (Id.).

[3]    Because plaintiff's notices of motion include requests for judgment and attach various medical records, the Court construes these submissions as cross-motions for summary judgment. See Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

"help real quick," and that "somebody's in here messing with me the wrong way and I'm tired of it." (Id. at 00:10–:16).  Plaintiff further stated, "I don't know what's going on but I'm fighting, in here fighting," and that something or someone was hitting her in the face.  (Id. at 00:34–:40).

At about 2:21 a.m., P.O.s Chery, Kressman, and Mitchell arrived at plaintiff's apartment. At the time, plaintiff was alone in her apartment with her dog.  The officers noted numerous large black bags, which appeared to be filled with clothing, and boxes scattered about the apartment.  According to defendants, plaintiff told the officers she was hearing voices (Bushnell Decl. Ex. C ("Chery Aff.") ¶ 6), that some supernatural force—a "spirit" or "ghost"—was attacking her (Bushnell Decl. Ex. F ("Mitchell Aff.") ¶ 5; id. Ex. G ("Kressman Aff.") ¶ 5), and that she "had things growing on her."  (Mitchell Aff. ¶ 8; see also Chery Aff. ¶ 7).

P.O.s Chery, Mitchell, and Kressman then radioed for assistance from MVPD's Emergency Services Unit ("ESU"), a subdivision comprising officers trained to handle situations involving emotionally disturbed persons.  The officers also radioed for an ambulance.

At about 2:42 a.m., an ambulance and two EMTs from the Eastchester Volunteer Ambulance Corps responded to plaintiff's apartment building.  They entered the apartment and asked plaintiff some questions.  The EMTs noted plaintiff had a laceration on her forehead, was hallucinating and uncooperative, and appeared nonsensical and incoherent.  (See Bushnell Decl. Ex. M ("Mardikian Aff.") ¶¶ 4, 6–7; id. Ex. N ("Tamarin Aff.") ¶¶ 4, 5, 10; id. Ex. O ("Eastchester Ambulance Report") at 1–2).  Plaintiff then showed the officers and EMTs photographs on her cell phone of what appeared to be a wig on her bed, and stated the photographs depicted the entity that had attacked her.  (Chery Aff. ¶ 7; Kressman Aff. ¶ 5; Mardikian Aff. ¶ 5).

At approximately 2:57 a.m., Sgt. Marcuculli and two ESU officers—P.O.s Baerga and Briley—arrived at plaintiff's apartment.  According to defendants, plaintiff continued to tell all those present something was growing and crawling on her, and that something had been attacking her in her bedroom.

After evaluating plaintiff's behavior, Sgt. Marcuculli and P.O.s Baerga and Briley determined to transport plaintiff to Montefiore MV for a psychiatric evaluation pursuant to MVPD's operational procedures concerning emotionally disturbed persons.  However, plaintiff did not want to go to the hospital, and refused to cooperate.

P.O.s Baerga and Briley then placed plaintiff in handcuffs to gain her cooperation and walked plaintiff down the stairs from her apartment to the ambulance.  P.O.s Mitchell and Kressman briefly helped to transport plaintiff down the stairs of the apartment building.  Plaintiff was placed in the ambulance, and at about 3:13 a.m., was transported to Montefiore MV.  (See Eastchester Ambulance Report at 1).

At Montefiore MV, plaintiff underwent a psychiatric evaluation.  According to plaintiff's medical records, her chief complaint was that she was being attacked by an entity in her bedroom, but denied any pain or discomfort.  (See Bushnell Decl. Ex. R at ECF 60–61).[4]  Three hours later, plaintiff complained to the attending physician of ankle and elbow pain, which she attributed to her encounter with the police.  (See id. at 63).  She did not complain of back or chest pain, and her medical records showed no signs of bruising.  X-rays were taken and showed no signs of fracture.

---

[4]     Citations to "ECF at __" refer to page numbers automatically assigned by the Court's Electronic Case Filing system.

Plaintiff testified that defendants ignored her requests to retrieve her cane and ankle boot before involuntarily transporting her from her apartment to the ambulance.  She further testified that when she was handcuffed, one of the defendants hit her in the back, aggravating a prior injury for which she had surgery and that included a rod placed in her spine.  Further, plaintiff testified that during the altercation, defendants "snatched" her right ankle, aggravating a fusion operation she had in January 2016.  (Bushnell Decl. Ex. B ("Pl. Dep.") at 66).

According to defendants and the testimony of non-defendant EMTs, plaintiff was restrained and placed in handcuffs with minimal force, and did not voice any complaints of pain or injury, to her right ankle or any other part of her body, as she was transported from her apartment to Montefiore MV.  Defendants and the EMTs also did not notice any pre-existing injuries to plaintiff's right ankle, or any other part of her body, save for the laceration on her forehead.

II.    Prior Medical History

Plaintiff testified that in 2008, she suffered a slip-and-fall at her prior residence and sustained several injuries.  According to plaintiff, over the course of several years, she underwent seventeen surgical procedures— including lumbar, thoracic, ribcage, right ankle, and knee operations—because of injuries from the 2008 fall.  (See Pl. Dep. at 8–9).  Her most recent surgery related to that incident—a right ankle fusion—took place on January 25, 2016.  (Id. at 9).

Plaintiff's medical records indicate that on August 5, 2016, plaintiff checked into the emergency room ("ER") at Montefiore New Rochelle Hospital ("Montefiore NR") for pain in her right wrist, right ankle, and ribs, from a slip-and-fall on August 2, 2016.  (Bushnell Decl. Ex. J at ECF 6).  X-rays were taken and showed no signs of fracture.  (Id. at 17–19).

On August 18, 2016, plaintiff was seen by a doctor at Montefiore NR, and told the doctor she had "severe pain" in her right ankle and wanted the hardware from her January 2016 right ankle fusion removed.  (Bushnell Decl. Ex. S at ECF 4).

On September 8, 2016, plaintiff again checked into the ER at Montefiore NR, this time for pain in her back, head, neck, and right ankle from a slip-and-fall that occurred the day prior. (Bushnell Decl. Ex. J at ECF 40–41, 43).  Plaintiff told the treating physician that "she saw some bright light in her room when something hit her in the back causing her to fall."  (Id. at ECF 48).

On September 28, 2016, plaintiff again checked into the ER at Montefiore NR, this time complaining of consistent head, back, and right ankle pain.  According to medical records, plaintiff told the attending physician, "My neighbor is performing voodoo on me," "I don't feel safe in my apartment, I feel like someone is pouring something on me, and I am being hurt in my apartment."  (Bushnell Decl. Ex. J at ECF 74).  A drug screen was conducted and returned positive for cocaine and barbiturates.  (Id. at ECF 82).  The attending physician diagnosed plaintiff with possible drug-induced psychosis and adjustment disorder (id.), and noted plaintiff's "paranoid delusions are secondary to substance abuse."  (Id. at ECF 95).

On October 12, 2016—one week prior to the encounter with MVPD at her apartment— plaintiff checked into the ER at Montefiore MV after a slip-and-fall in her apartment earlier that day.  (See Bushnell Decl. Ex. R at ECF 1).  She complained of head, shoulder, right elbow, right ankle, and left ribcage pain.  (Id.).  X-rays were taken and showed no signs of fracture.  (Id. at 35–37).

III.    Medical History Following October 19, 2016

On November 15, 2016, about one month after the events giving rise to this action, plaintiff underwent an MRI of her lumbar spine.  The MRI showed normal alignment and no signs of fracture.  (See Bushell Decl. Ex. T at ECF 1–2).

On November 17, 2016, plaintiff had X-rays taken of her right foot.  The images showed soft tissue swelling but "no acute fracture or destructive process."  (Bushnell Decl. Ex. J at ECF 118).  Plaintiff's attending physician acknowledged the absence of fracture or dislocation, and referred plaintiff for pain management and an MRI.  (Bushnell Decl. Ex. S at ECF 3).

On December 20, 2016, plaintiff underwent an MRI of her right ankle.  The MRI showed normal alignment, intact ligaments and tendons, and no signs of fracture.  (Bushell Decl. Ex. T at ECF 3–7).

On January 4, 2017, plaintiff checked into the ER at Montefiore MV for pain in her shoulder, head, neck, and right ankle.  She told the attending physician she slipped and fell a few days prior, but that her pain has gotten worse since "a fall in Oct[ober] 2016."  (Bushnell Decl. Ex. R at ECF 104).

In March 2017, plaintiff underwent an operation at Montefiore MV to remove hardware from her ankle which had been causing her pain.

**DISCUSSION**

I.    Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material

fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).[5]

A fact is material when it "might affect the outcome of the suit under the governing law. . . .  Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 248.  The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."  <u>Wilson v. Nw. Mut. Ins. Co.</u>, 625 F.3d 54, 60 (2d Cir. 2010).  It is the moving party's burden to establish the absence of any genuine issue of material fact.  <u>Zalaski v. City of Bridgeport Police Dep't</u>, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party fails to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 322–23.  If the non-moving party submits "merely colorable" evidence, summary judgment may be granted.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 249–50.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." <u>Brown v. Eli Lilly & Co.</u>, 654 F.3d 347, 358 (2d Cir. 2011).  The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury reasonably could find for him.  <u>Dawson v. County of Westchester</u>, 373 F.3d 265, 272 (2d Cir. 2004).

---

[5]     Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party.  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary judgment is sought, summary judgment is improper.  Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need consider only evidence that would be admissible at trial.  Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).  The burden to proffer evidence admissible pursuant to the Federal Rules of Evidence applies "equally to pro se litigants."  Varughese v. Mt. Sinai Med. Ctr., 2015 WL 1499618, at *4 (S.D.N.Y. Mar. 27, 2015) (citing Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001)).[6]  Accordingly, bald assertions, completely unsupported by admissible evidence, are not sufficient to overcome summary judgment.  Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

## II.    Unconstitutional Seizure Claim

Defendants argue they are entitled to summary judgment on plaintiff's Fourth Amendment unconstitutional seizure claim.

The Court agrees.

---

[6]    Plaintiff will be provided copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

A.    <u>Legal Standard</u>

The Fourth Amendment, which applies to the states through the Fourteenth Amendment, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.

"An involuntary confinement to a hospital constitutes a seizure within the meaning of the Fourth Amendment."  <u>Kraft v. City of New York</u>, 696 F. Supp. 2d 403, 415 (S.D.N.Y. 2010). "The Fourth Amendment requires that an involuntary hospitalization 'may be made only upon probable cause, that is, only if there are reasonable grounds for believing that the person seized is subject to seizure under the governing legal standard.'"  <u>Id</u>. (quoting <u>Glass v. Mayas</u>, 984 F.2d 55, 58 (2d Cir. 1993)).  "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers."  <u>Brock v. City of New York</u>, 2018 WL 3579099, at *7 (S.D.N.Y. July 25, 2018) (quoting <u>Weyant v. Okst</u>, 101 F.3d 845, 852 (2d Cir. 1996)).

Under the New York Mental Hygiene Law, a police officer "may take into custody [and remove to a hospital] any person who appears to be mentally ill and is conducting . . . herself in a manner which is likely to result in serious harm to the person or others."  N.Y. Mental Hyg. Law § 9.41.  "In assessing whether an officer had probable cause to [seize] a person under this statute, courts apply the same objective reasonableness standard that governs Fourth Amendment claims."  <u>Arroyo v. City of New York</u>, 2016 WL 8677162, at *3 (S.D.N.Y. July 8, 2016), <u>aff'd</u>, 683 F. App'x 73 (2d Cir. 2017) (summary order).

B.      Personal Involvement

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a

prerequisite to an award of damages under Section 1983."  Wright v. Smith, 21 F.3d 496, 501

(2d. Cir. 1994).

> Supervisor liability under § 1983 can be shown in one or more of the following
> ways:  (1) actual direct participation in the constitutional violation, (2) failure to
> remedy a wrong after being informed through a report or appeal, (3) creation of a
> policy or custom that sanctioned conduct amounting to a constitutional violation,
> or allowing such a policy or custom to continue, (4) grossly negligent supervision
> of subordinates who committed a violation, or (5) failure to act on information
> indicating that unconstitutional acts were occurring.

Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003) (citing Colon v. Coughlin, 58 F.3d 865,

873 (2d Cir. 1995)).[7]  Moreover, Section 1983 liability cannot be predicated on a theory

of respondeat superior.  See City of Canton v. Harris, 489 U.S. 378, 385 (1989).

C.      Application

As a preliminary matter, P.O.s Mitchell, Kressman, and Chery are entitled to summary

judgment on plaintiff's unconstitutional seizure claim because they were not personally involved

in the determination to transport plaintiff to Montefiore MV or in the seizure of plaintiff for that

purpose.  Indeed, the undisputed record evidence demonstrates that only Sgt. Marcuculli and

ESU P.O.s Baerga and Briley determined to involuntarily transport plaintiff, and only P.O.s

Baerga and Briley handcuffed plaintiff to gain her cooperation.

---

[7]      After Ashcroft v. Iqbal, 556 U.S. 662 (2009), district courts within the Second Circuit
have been divided as to whether claims alleging personal involvement under the second, fourth,
and fifth of these factors remain viable.  See Marom v. City of New York, 2016 WL 916424, at
*15 (S.D.N.Y. Mar. 7, 2016) (collecting cases).  The Second Circuit has yet to resolve this
dispute.  Id.

And as for Sgt. Marcuculli and P.O.s Baerga and Briley, there exists no genuine issue of material fact respecting the reasonableness of plaintiff's involuntary transport to Montefiore MV and the officers' probable cause to detain plaintiff for that purpose.  The undisputed record evidence, including plaintiff's recorded call to MVPD, demonstrates plaintiff requested police assistance on October 19, 2016, because she believed she was being attacked by something or someone in her apartment.  Indeed, plaintiff's chief complaint to the attending physician at Montefiore MV—following her involuntary transport to Montefiore MV—was that she believed she was "being attacked by an entity in her bedroom."  (Bushnell Decl. Ex. R at ECF 60). Although during her deposition plaintiff did not recall having informed the officers that a supernatural entity, such as a spirit or ghost, attacked her in her bedroom, her own medical records, as well as the testimony of non-parties, belie plaintiff's disbelief.  See, e.g., Jeffreys v. City of New York, 426 F.3d 549 (2d Cir. 2005) (concluding summary judgment may be entered against a plaintiff when there is "nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony," and the Court, "even after drawing all inferences in the light most favorable to the plaintiff, determine[s] that no reasonable person could believe [the plaintiff's] testimony").

Moreover, the undisputed record evidence indicates plaintiff had a bleeding laceration on her forehead when defendants responded to plaintiff's apartment.  Given plaintiff's physical condition and the officers' interactions with plaintiff, it was reasonable for Sgt. Marcuculli, and ESU P.O.s Baerga and Briley, to determine to take custody of plaintiff and to have her transported to Montefiore MV for a psychiatric evaluation pursuant to Section 9.41 of the New York Mental Hygiene Law.  Moreover, such conduct is authorized by written MVPD operational procedures for handling emotionally disturbed individuals.  (See Bushnell Decl. Ex. Q at 1)

("Section 9.41 of the New York State Mental Hygiene Law empowers the police to take into custody any person who appears to be mentally ill and is conducting themselves in a manner which is likely to result in serious harm to themselves or others.").

For the above reasons, no material factual dispute exists respecting plaintiff's seizure and involuntary transport to Montefiore MV on October 19, 2016, which were reasonable under the circumstances.  Accordingly, defendants are entitled to summary judgment on plaintiff's unconstitutional seizure claim.

III.    Excessive Force Claim

Defendants argue they are entitled to summary judgment on plaintiff's excessive force claim because P.O.s Baerga and Briley's use of force was reasonable, plaintiff presents no triable issue of material fact, and plaintiff's own medical records contradict her claim.

The Court agrees.

"The Supreme Court has held that 'claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard.'"  Washpon v. Parr, 561 F. Supp. 2d 394, 406 (S.D.N.Y. 2008) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)).  "To determine whether the amount of force used is reasonable, a reviewing court must take into consideration the 'totality of the circumstances faced by the officer on the scene,'" id. (citing Lennon v. Miller, 66 F.3d 416, 425 (2d Cir. 1995)), and "assess whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to their underlying intent or motivation."  Id.  (citing Graham v. Connor, 490 U.S. at 397).

"If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe."  Robison v. Via, 821 F.2d 913, 924 (2d Cir. 1987).  Indeed, courts in this Circuit have allowed claims to survive summary judgment where the only injury alleged is bruising.  See Hayes v. New York City Police Dep't, 212 F. App'x 60, 62 (2d Cir. 2007) (summary order).

However, "a plaintiff must present sufficient evidence to establish that the alleged use of force is objectively sufficiently serious or harmful enough to be actionable."  Washpon v. Parr, 561 F. Supp. 2d at 406.  In other words, plaintiff must establish that the amount of force used was more than de minimis.  Rincon v. City of New York, 2005 WL 646080, at *4 (S.D.N.Y. Mar. 21, 2005).  In fact, "de minimis injury can serve as conclusive evidence that de minimis force was used."  Washpon v. Parr, 561 F. Supp. 2d at 407.  Thus, if a plaintiff suffers only de minimis injuries, summary judgment is appropriate.  Smith v. City of New York, 2010 WL 3397683, at *10 (S.D.N.Y. Aug. 27, 2010), aff'd sub nom. Smith v. Tobon, 529 F. App'x 36 (2d Cir. 2013) (summary order).

As a preliminary matter, P.O.s Mitchell, Kressman, and Chery, and Sgt. Marcuculli are entitled to summary judgment on plaintiff's excessive force claim because they were not personally involved in physically gaining plaintiff's cooperation or handcuffing plaintiff on October 19, 2016.  Indeed, the undisputed record evidence indicates only P.O.s Baerga and Briley handcuffed plaintiff to gain her cooperation.

Nevertheless, plaintiff presents no evidence sufficient to demonstrable a triable issue of material fact exists with respect to the amount of force used by P.O.s Baerga and Briley.  Rather, taking into consideration the undisputed record evidence and the totality of the circumstances

14

faced by the officers at the scene, P.O.s Baerga and Briley acted within their authority when they placed plaintiff in restraints to gain her cooperation.

Indeed, the record evidence demonstrates that upon her arrival at Montefiore MV, plaintiff denied having any physical pain or discomfort (See Bushnell Decl. Ex. R at ECF 61), and her skin was not bruised and showed no signs of trauma (id. at ECF 62–63).  And although plaintiff complained of ankle and right elbow pain about three hours after her arrival at Montefiore MV, she denied having any back pain (id. at ECF 63), and medical tests performed at that time revealed no signs of injury to her ankle, elbow, chest, and back.  (Id. at ECF 76–77).  In other words, the record evidence demonstrates no material issue of fact with respect to the amount of force used against plaintiff on October 19, 2016.  Indeed, the undisputed record evidence does not even suggest plaintiff suffered de minimis injuries at the hands of MVPD officers on October 19, 2016.

On the contrary, the record evidence indicates the pain and discomfort plaintiff allegedly has experienced, primarily in her back and right ankle, is attributable to her 2008 slip-and-fall injuries and subsequent corrective medical procedures.  Indeed, the injuries plaintiff attributes in her complaint to the October 19, 2016, incident are the same injuries plaintiff had complained of to medical personnel prior to the events giving rise to this action.  Moreover, none of the medical tests—including X-rays and MRIs—performed on plaintiff's ankle and back following the events of October 19, 2016, indicate a fracture or other injury that plaintiff alleges in this lawsuit.

For the reasons set forth above, and based on the undisputed evidentiary record, there exists no triable issue of material fact with respect to plaintiff's excessive force claim, and defendants are entitled to summary judgment on same.

IV.    Monell Claim

As plaintiff has not presented evidence indicating an issue of material fact concerning any violation of her constitutional rights, the City is entitled to summary judgment on plaintiff's claim under Monell v. Department of Social Services, 436 U.S. 658 (1978), for negligent hiring, training, and retention.  See Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006).

V.    Assault and Battery Claims

Defendants argue they are entitled to summary judgment on plaintiff's state law assault and battery claims for the same reasons they are entitled to summary judgment on plaintiff's Fourth Amendment excessive force claim.

The Court agrees.

"In New York, an assault is an intentional placing of another person in fear of imminent harmful or offensive contact.  A battery is an intentional wrongful physical contact with another person without consent." Chamberlain v. City of White Plains, 986 F. Supp. 2d 363, 398 (S.D.N.Y. 2013) (quoting United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp., 994 F.2d 105, 108 (2d Cir. 1993)).  "A plaintiff asserting a battery claim against a police officer must 'prove that [the officer's] conduct was not reasonable within the meaning of the New York statute concerning justification of law enforcement's use of force in the course of their duties.'" Id. (quoting Nimely v. City of New York, 414 F.3d 381, 391 (2d Cir. 2005)) (citing N.Y. Penal Law § 35.30(1)) (alteration in original).

"Thus, with the exception of the state actor requirement, the elements of a Section 1983 excessive force claim and state law assault and battery claims are substantially identical." Chamberlain v. City of White Plains, 986 F. Supp. 2d at 398 (citing Posr v. Doherty, 944 F.2d 91, 94–95 (2d Cir. 1991)).  "In effect, the test for whether a plaintiff can maintain [state law

assault and battery] cause[s] of action against law enforcement officials is the exact same test as the one used to analyze a Fourth Amendment excessive force claim."  Id. (alterations in original); see also Kramer v. City of New York, 2004 WL 2429811, at *11 (S.D.N.Y. Nov. 1, 2004) ("In the context of state officers performing their lawful duties, New York State law regarding assault and battery parallels the federal laws regarding excessive force.").

Accordingly, defendants are entitled to summary judgment on plaintiff's state law assault and battery claims for the same reasons they are entitled to same with respect to plaintiff's Fourth Amendment excessive force claim.

VI.    Plaintiff's Requests for Judgment

As mentioned above, plaintiff submitted two requests for judgment which the Court construes as cross-motions for summary judgment.  (See Docs. ## 45, 55).  Specifically, plaintiff states in those submissions:  "I got hurt and need the Judge to [address] it" (Doc. #45 at ECF 1), and "Before dismissing this case, make a[n] injury judgement agai[n]st the City of Mount Vernon Police Officers."  (Doc. #45 at ECF 1).

Plaintiff's submissions do not support her allegations in this matter and do not establish an entitlement to judgment, as a matter of law, in plaintiff's favor.  Accordingly, plaintiff's requests for judgment are denied.

## CONCLUSION

Defendants' motion for summary judgment (Doc. #47) is GRANTED, and plaintiff's cross-motions for summary judgment (Docs. ## 45, 55) are DENIED.

The Clerk is instructed to terminate defendants' motion (Doc. #47) and close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: June 22, 2020
      White Plains, NY

                                    SO ORDERED:

                                    Vincent L. Briccetti
                                    United States District Judge